# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO TECHNOLOGY
GROUP LLC d/b/a NEWTEC, a
Delaware limited liability company,

       Plaintiff-Counterdefendant,

vs.                                 No. CIV 07-0924 JB/KBM

INTERNATIONAL ASSOCIATION
OF MACHINISTS AND AEROSPACE
WORKERS, LOCAL LODGE NO. 2515,
a New Mexico labor union,

       Defendant-Counterplaintiff.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Petitioner/Plaintiff-Counterdefendant New

Mexico Technology Group LLC's Motion for Summary Judgment, filed November 2, 2007 (Doc.

8)("Motion"); and (ii) International Association of Machinists and Aerospace Workers, Local Lodge

No. 2515's Response to Plaintiff's Motion for Summary Judgment, filed 11/2/07, and Counter-

Motion for Summary Judgment, filed December 21, 2007 (Doc. 11)("Countermotion").  The Court

held a hearing on April 4, 2008.  The issue is whether the arbitrator's Opinion and Award should

be vacated or enforced. The parties agree that there are no genuine issues of material fact in dispute.

 The Court will deny New Mexico Technology Group LLC d/b/a/ New Tech's motion to vacate the

arbitrator's award, because it believes that the arbitrator's award draws its essence from the

Collective Bargaining Agreement.  The Court will grant International Association of Machinists and

Aerospace Workers, Local Lodge No. 2515's Response to Plaintiff's Motion for Summary

Judgment, filed 11/2/07, and Counter-Motion for Summary Judgment in part.  The Court will not

grant Local 2515's request for attorneys' fees and costs, however, because it does not believe that NewTec acted vexatiously or out of bad faith in bringing this action.

## FACTUAL BACKGROUND

**1.     The Parties.**

NewTec is a government contractor providing various services to the Army at the White Sands Missile Range in New Mexico.  See Motion at 2.  One of the services NewTec provides is picking up ammunition from an ammunition supply point ("ASP") and delivering it to the firing ranges at White Sands.  See id.  Steven Calhoun ("Calhoun") and his work partner, Matt Carrell ("Carrell"), worked for NewTec as Explosive Handlers/Drivers.  See id.

**2.     The Collective Bargaining Agreement.**

NewTec and Local 2515 are parties to a Collective Bargaining Agreement ("CBA") governing the employment relationship between NewTec and its employees, including Calhoun and Carrell.  See id.  The following provisions of the parties' CBA are relevant to the dispute:

Article Four

Management Rights

1.00    The Company shall have full and exclusive rights, subject to the terms of this Agreement, of managing the business, including, but not limited to, the direction of the work force, the right to plan, direct and control all business operations, the assignment of duties, and qualifications of employees to perform work, scheduling of all hours of work and other aspects of production and business methods and the determination of quality standards, right to hire, promote, demote, and transfer employees, to cross-utilize employees, to discipline, suspend or discharge for just cause, lay off or relieve employees from duties, change or eliminate existing jobs or create new jobs, and establish rules of conduct.  Any of the rights, powers, functions, or authority not specifically abridged by the Agreement are retained by the Company.

CBA at 5, Exhibit A to Countermotion, filed December 21, 2007 (Doc. 11-3)("CBA").

Article Seventeen

Promotions and Reclassifications

1.00    The following definitions shall apply in this Article and throughout this

Agreement:

d.      <u>Reclassification</u> - Reclassification is defined as the award of a Job
Classification at an equal or lower Labor Grade.

11.00   <u>Reclassification</u>:  There are two reasons that could lead to reclassification
action:

a.      Employee performance

b.      Changes in level or complexity of workload

11.01   Reclassification actions will be handled differently depending on the reason:

a.      Reclassification resulting from employee performance will be
to an equal  or lower Labor Grade and will not adversely
affect other employees.

CBA at 18.

Article Thirty-Five

Arbitration

1.02    The arbitrator thus chosen shall decide the matter and his decision shall be
final and binding upon all Parties.  The Arbitrator shall have no authority to
alter, add to, or ignore the terms negotiated under this Agreement.  The
Arbitrator shall be limited to finding the facts and to applying them to the
terms of this Agreement.  He shall not add meanings to this Agreement that
were not negotiated.

CBA at 41.

Introduction to Appendix D

Rates of Pay

1.01    <u>Pay Rate Calculation Rules</u>.  the following rules will apply to the calculation

-3-

of pay rates throughout the term of the Agreement:

    e.    <u>Reclassification</u>.  Employees who are reclassified will be paid a rate of pay equal to the pay rate of the highest paid employee in the job classification to which they are reclassified.

Appendix D

Pay Rate Schedule

| Trade: | Current Pay Rate: | Labor Grade: | Beginning April 13, 2007: |
| --- | --- | --- | --- |
| Carpenter C | $17.95 | 9 | $18.67 |

CBA at 49, Exhibit 2 to Complaint, filed September 18, 2007 (Doc. 1-3).

**3.**    **The Incident.**

Calhoun and Carrell were required to have access to the ASP to perform their jobs.  <u>See</u> Motion at 2.  On June 5, 2006, a secured gate, protecting stored ammunition at the ASP, was left unlocked and open.  <u>See</u> <u>id</u>.  NewTec conducted a five-day investigation.  <u>See</u> <u>id</u>.  Calhoun was suspended, without pay, for five days beginning on June 6, 2006.  <u>See</u> Countermotion at 3.  Based on this incident, NewTec issued Calhoun and Carrell letters of reprimand.  <u>See</u> <u>id</u>.  The Army, through its civilian Ammunitions manager, refused to allow Calhoun and Carrell further access to the ASP.  <u>See</u> <u>id</u>.  Because Calhoun and Carrell were no longer authorized to access the ASP, they could not perform the duties of an Explosive Handler/Driver.  <u>See</u> <u>id</u>. at 2-3.

**4.**    **Reclassification.**

NewTec contends it was left with only two options: (i) to terminate Calhoun's and Carrell's employment; or (ii) to preserve their employment by reclassifying them in accordance with the reclassification provisions of the CBA.  <u>See</u> <u>id</u>. at 3.  NewTec reclassified Calhoun and Carrell.  <u>See</u> <u>id</u>.  On July 12, 2006, NewTec reclassified Calhoun to the position of Carpenter C.  <u>See</u> <u>id</u>.  NewTec

contends that the reclassification was based on the available positions for which Calhoun was qualified.  See id.  The pay rate for a Carpenter C under the CBA, at that time, was $17.95.  See id. Calhoun's previous pay rate as an Explosive Handler/Driver was $24.10.   See id.   The reclassification resulted in a $6.15 decrease in Calhoun's hourly wage.  Carrell was also reclassified to a different job position.  See id.

Local 2515 submitted grievances on behalf of Calhoun and Carrell, and proceeded through the grievance procedures to arbitration.  See id.  The grievances for Calhoun and Carrell were arbitrated separately by different arbitrators.  See id.  Calhoun's grievance was arbitrated by E. Gayle Sheridan ("the arbitrator") at a hearing held on April 24, 2007 in Alamogordo, New Mexico. See id.; Exhibit B, Arbitrator's Opinion and Award at 2, filed November 2, 2007 (Doc. 8-4)("Opinion and Award").

The arbitrator rendered his opinion and award on June 24, 2007.  See id. At the conclusion of the hearing, the parties asked to submit post-hearing briefs by May 25, 2007.  See id.  The arbitrator considered the record of the case closed on May 28, 2007.  See id.  The parties made the following stipulations:

> [(i)] All steps of the grievance procedure were completed or waived and the case was properly before the arbitrator; [(ii)] The arbitrator's decision would be final and binding; [(iii)] The arbitrator retains jurisdiction to resolve any remedy dispute; [(iv)] The Company has the burden of going forward first with its evidence based on the application of the discipline imposed on the Grievant; [(v)] The witness would testify under affirmation and were to be sequestered; [(vi)] There would be no stenographic record or official record of the hearing and the arbitrator's notes are not discoverable.

Id.

The arbitrator issued his Opinion and Award in Calhoun's case on June 24, 2007.  See Exhibit B, Arbitrator's Opinion and Award at 26, filed November 2, 2007 (Doc. 8-4)("Opinion and

-5-

Award"). The arbitrator defined the issues as "[(i)] Did the Company have just cause to discipline and reclassify the Grievant in violation of Article Four?  If not, what should the remedy be? [(ii)] Did the Company violate Article Seventeen when it reclassified the Grievant to Carpenter C at a reduced rate of pay effective July 21, 2006.  If so, what should the remedy be?"  Id. at 4.

The arbitrator found that the Army, as the Client of NewTec, "retained the right to prohibit specific employees of the Contractor from performing work on or at specific work areas.  This right can be exercised for no reason or for any reason."  Id. at 17.  The arbitrator also found that "[a] Contractor failing to honor the Client's request risks the Client seeking another Contractor to provide the services provided by the original Contractor."  Id.  Because Carrell and Calhoun were to be removed from the ASP and not reassigned to work at the ASP, NewTec's "options were to terminate the employee or reclassify and assign the employees accordingly."  Id.  The arbitrator determined that NewTec "opted to retain and reclassify both employees following their suspensions of five days without pay, although the employees were permitted to use earned vacation to avoid the no-pay suspension."  Id.

The arbitrator concluded that the Army and NewTec "place an unjustifiable responsibility on the two-person 'Teams' with the result that if one member of the 'team' violates a work rule, both team members are equally responsible."  Id. at 23.  The arbitrator concluded that Calhoun was not assigned or issued the keys given to Carrell.  See id.  The arbitrator noted that "[i]f one member of the team was involved in violating many of New[T]ec's Work Ethics, such as being under the influence or in possession of drugs or alcohol, fighting with another person, gambling, or any number of other rules, New[T]ec would not impose the same disciplinary penalty on the other team member."  Id.

The arbitrator concluded that the letter of reprimand issued to Calhoun, based on the security violation, was justified, but concluded that the five-day no-pay suspension was not.  See id. at 24. "The arbitrator recognize[d] that the Army, as Owner/Client, has the authority to dictate those individuals who have access to secured areas.  As a non-party to the CBA, the Army's prohibition of [Calhoun] to have access to the ASP is beyond the authority of the arbitrator to change."  Id.  The arbitrator relied on Article Seventeen, Section 11.01(a) of the CBA, to conclude that he disagreed with NewTec's contention "that to continue [Calhoun]'s higher rate would adversely affect other employees."  Opinion and Order at 24.  The arbitrator decided that Calhoun "would not be given any preferential work assignments or similar perks to adversely affect his co-workers."  Id.  The arbitrator noted, however, that "[i]f it should result in an adverse effect, the co-workers will voice their objections."  Id.  The arbitrator concluded that "[i]n this case [he] reached his decision for the Award from the essence of the contract, facts, and argument advanced by the parties at the hearing and their respective post-hearing briefs."  Id. at 25.

The arbitrator granted the grievance in part and denied it in part.  See id. at 26. The arbitrator determined that NewTec had violated Article Seventeen of the CBA by reducing Calhoun's pay to that of a Carpenter C after he was reclassified.  See Motion at 3.  The arbitrator concluded that NewTec had just cause to impose the five-day no-pay suspension.  See id.  He also concluded that Calhoun should be paid or reissued five vacation days, "depending on the method he elected when deciding how to handle the suspension."  Id.  The arbitrator ordered that any notes or letters in Calhoun's file reflecting the suspension "are to be removed."  Id.  The arbitrator concluded that NewTec violated Article Seventeen by reclassifying Calhoun to Carpenter C at a reduced rate of pay effective July 21, 2006.  See id.  The arbitrator ordered that Calhoun should receive back pay for the

difference between Carpenter C and the $24.10 per hour rate he received in his former classification.

 See id.  The arbitrator determined that the $24.10 rate shall be "red-circled" and not increased until

the rate of classification Calhoun is working exceeds $24.10.  Id.  "During this 'make-up' period,

[Calhoun] is required to avail himself to all higher-rated positions he is qualified and eligible to

perform.  [Calhoun]'s failure to be upgraded will result in forfeiting his protected rate of $24.10 and

returning to the rate of whatever classification he is then assigned."  Id.  The arbitrator also ordered

that "[t]he back pay and continuation of the 'red-circled' rate shall be considered benefits bearing

and applied accordingly."  Id.  The arbitrator's award stated:

> 2.      The Company violated Article Seventeen when the Grievant was reclassified
> as a Carpenter C at the reduced rate o[f] pay effective July 21, 2006.  The
> Grievant should receive back pay for the difference between Carpenter C and
> the $24.10 per hour received in his former classification.  The $24.10 rate
> shall be "red-circled" and not increased until the rate of the classification the
> Grievant is working exceeds $24.10.  This can be accomplished through
> negotiated general increases or by being promoted to a higher rated
> classification.  During this "make-up" period, the Grievant is required to
> avail himself to all higher-rated positions he is qualified and eligible to
> perform.  The Grievant's failure to be upgraded will result in forfeiting his
> protected rate of $24.10 and returning to the rate of whatever classification
> he is then assigned.
>
> 3.      The back pay and continuation of the "red-circled" rate shall be considered
> benefits bearing and applied accordingly.

Opinion and Award ¶¶ 2-3, at 26.

On August 9, 2007, NewTec asked the arbitrator to reform that part of the award which

determined that NewTec had violated Article Seventeen of the CBA by reducing Calhoun's pay to

that of a Carpenter C after he was reclassified.  See Motion at 3.  NewTec submitted a copy of the

arbitrator's award in Carrell's case, which had determined that reclassification of Carrell did not

violate the CBA.  See id. at 3-4.  The arbitrator in Calhoun's case did not reform his award.

-8-

## PROCEDURAL BACKGROUND

On September 18, 2007, NewTec made an application for review and vacating of the arbitration award against Local 2515.  See Doc. 1.  NewTec asked the Court to vacate the arbitrator's award.  See id. at 4.  Local 2515 answered NewTec's complaint on October 10, 2007, and counterclaimed against NewTec, asking the Court to enter judgment in its favor and dismiss NewTec's complaint.  See Answer and Counterclaim, filed October 10, 2007.

On November 2, 2007, NewTec moved for summary judgment.  See Motion at 1.  NewTec contends that the arbitrator's Opinion and Award did not arise from the essence of the CBA, and is contrary to express language of the CBA.  See Motion at 6. NewTec disagrees with the arbitrator's order that it "pay Calhoun back pay, and . . . freeze his pay rate at $24.10 as a 'red-circled' rate until the other Carpenter Cs caught up."  Id. at 7 (internal quotations omitted).  NewTec argues that the arbitrator made "no mention of and appears to ignore the mandatory provisions of Appendix D that required NewTec to pay Calhoun the $17.95 rate for a Carpenter C, agreed to by the parties in the CBA."  Id.  NewTec contends that there is no provision that allows an employees' pay rate to be "frozen or 'red-circled,' while the employee is required to avail himself of higher paying positions or risk reverting to some lower pay rate."  Id.

NewTec argues that the arbitrator had "no room" to apply a "just cause standard" to its reclassification of Calhoun.  Id. at 8.  NewTec notes that the arbitrator never determined that reclassification is a form of discipline.  See id.  NewTec contends that the reclassification provisions in Article Seventeen and Appendix D are unrelated to and separate from discipline.  See id. "NewTec asserts that the simple fact that Calhoun would be paid significantly more per hour for doing the same work as every other Carpenter C, and no more, amounts to one of the most

preferential work assignments and perks imaginable." Id. at 9.  NewTec contends the arbitrator's

"disregard for the [purported] illegitimacy of his Award and the disruption it will cause in the

workplace demonstrates his gross misunderstanding of the CBA and the protections it is supposed

to provide for workers and NewTec alike." Id.  NewTec argues that the Opinion and Award and its

remedies are "fashioned out of whole cloth and have no basis in the CBA and violate its explicit

provisions." Id. at 9-10.  NewTec concludes that the arbitrator's award for it to pay Calhoun at a

higher rate is beyond an arbitrator's power under the CBA, does not arise from the essence of the

CBA, and violates the terms of the CBA.   See id. at 10.  NewTec asks the Court to vacate

paragraphs 2 and 3 of the Award on page 26, which state:

> 2.      The Company violated Article Seventeen when the Grievant was reclassified
> as a Carpenter C at the reduced rate o[f] pay effective July 21, 2006.  The
> Grievant should receive back pay for the difference between Carpenter C and
> the $24.10 per hour received in his former classification.  The $24.10 rate
> shall be "red-circled" and not increased until the rate of the classification the
> Grievant is working exceeds $24.10.  This can be accomplished through
> negotiated general increases or by being promoted to a higher rated
> classification.  During this "make-up" period, the Grievant is required to
> avail himself to all higher-rated positions he is qualified and eligible to
> perform.  The Grievant's failure to be upgraded will result in forfeiting his
> protected rate of $24.10 and returning to the rate of whatever classification
> he is then assigned.
>
> 3.      The back pay and continuation of the "red-circled" rate shall be considered
> benefits bearing and applied accordingly.

Opinion and Award ¶¶ 2-3, at 26.  See Motion at 10.

Local 2515 contends that the arbitrator's award was based on the CBA, as stated on page 25

of the Opinion and Award.  See Countermotion at 7.  Local 2515 asserts that the arbitrator grounded

his findings in interpretations of the CBA.  See id. at 14.  Local 2515 contends that NewTec's

reclassification of and cutting the pay of Calhoun was a form of discipline.  See id. at 16-18.  "By

upholding the reclassification of Calhoun but retaining Calhoun's former rate of pay, [the arbitrator] effectively balanced NewTec's obligation to the Army that Calhoun be removed from the ASP, with Calhoun's right to be free from discipline without just cause under the CBA." Id. at 20.  Local 2515 argues that the arbitrator's "provision for a red-circle rate . . . draws its essence from, and is . . . a direct response to, New[T]ec's arguments regarding Appendix D of the CBA." Id. at 22.  Local 2515 contends that the arbitrator did not err in not reforming his Award in light of the award made by arbitrator M.W. Gear in Carrell's grievance procedure, because the circumstances of Carrell and Calhoun differ.  See id. at 22-23.  Moreover, Local 2515 argues that the arbitrator's award is not subject to vacation on this ground, because he considered the record closed on May 28, 2007, and whether to receive a different arbitrator's award into the record is a matter of procedure to be determined solely by the arbitrator.  See id. at 24.  Local 2515 asks for its costs and attorneys fees associated with enforcing the arbitration award.

At the April 4, 2008 hearing, NewTec conceded that, under the CBA, the right to reclassification is not under the sole discretion of the company and is instead governed by Article Seventeen of the CBA.  See Transcript of Hearing (taken April 4, 2008)("Tr.") at 6:1-8 (Burns).[1] NewTec acknowledged that the only ways of moving within job classifications or labor grades is through a promotion or reclassification.  See id. at 6:20-7:1 (Court & Burns).  NewTec argued that it fit Calhoun's reclassification into paragraph A of Article Seventeen, under employee performance. See id. at 7:6-9 (Court & Burns).  NewTec contended that, because Calhoun could no longer perform his job as an explosive handler, then it was able to reclassify him under paragraph 11 of Article

---

[1]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Seventeen.  See id. at 7:13-17 (Burns).  NewTec conceded that Calhoun was not reclassified because of changes in the complexity of workload.  See id. at 10:6-8 (Burns).  NewTec argued that, once an employee is reclassified, the employee is paid under Appendix D of the CBA with a rate of pay equal to the highest pay of an employee in the job classification to which the employee was reclassified.  See id. at 12:2-7 (Burns).  Thus, Calhoun's pay rate would be for the Carpenter C position to which he was reclassified.  See id. at 12:7-9 (Burns).  Local 2515 indicated that NewTec's reclassification was correct.  See id. at 39:17-40:4 (Court & Tanner).  Local 2515 agreed that NewTec reclassified Calhoun under paragraph B of Article Seventeen.  See id. at 41:4-21 (Tanner & Court).  Local 2515 argued that the arbitrator relied on Article Four and Article Seventeen of the CBA to make his decision.  See id. at 52:22-24 (Tanner).

## LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENTS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant has "the initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Mirzai v. State of N. M. Gen. Servs. Dep't, 506 F.Supp.2d 767, 774 (D.N.M. 2007)(Browning, J.)(internal quotations omitted).  That is, the moving party has the initial burden to demonstrate absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   If the movant meets that burden, then the burden shifts to the nonmovant "to present specific, admissible facts from which a rational trier of fact could find for the nonmovant."  Velasquez v. Frontier Med., Inc., 375 F.Supp.2d 1253, 1262 (D.N.M. 2005)(Browning J.).  The

nonmovant must set forth specific facts and cannot rely only on his pleadings.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id.

"For the purposes of summary judgment, the court assumes the evidence of the nonmoving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor." Velasquez v. Frontier Med., Inc., 375 F.Supp.2d at 1263 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate if there is no genuine issue of material fact.  See Trujillo v. Bd. of Educ., Albuquerque Pub. Sch., 410 F.Supp.2d 1033, 1039 (D.N.M. 2005)(Browning, J.).  "An issue of fact is 'genuine' if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  "Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Velasquez v. Frontier Med., Inc., 375 F.Supp.2d at 1263 (internal quotations and citations omitted).  Moreover, the court may consider only admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

### LAW REGARDING VACATING AN ARBITRATION AWARD

9 U.S.C. §10 provides, in relevant part:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the

application of any party to the arbitration --

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

* * * *

(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. §10.

"[A]rbitration is the substitute for industrial strife." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578 (1960). "[A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." Id. As the Supreme Court for the United States explained in United Steelworkers of Am. v. Warrior & Gulf Navigation Co.:

The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed by foreign to the competence of courts. A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. . . . The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law -- the practices of the industry and the shop -- is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the

-14-

> common law of the shop and their trust in his personal judgment to bring to bear
> considerations which are not expressed in the contract as criteria for judgment. The
> parties expect that his judgment of a particular grievance will reflect not only what
> the contract says but, insofar as the collective bargaining agreement permits, such
> factors as the effect upon productivity of a particular result, its consequence to the
> morale of the shop, his judgment whether tensions will be heightened or diminished.
> For the parties' objective in using the arbitration process is primarily to further their
> common goal of uninterrupted production under the agreement, to make the
> agreement serve their specialized needs. The ablest judge cannot be expected to
> bring the same experience and competence to bear upon the determination of a
> grievance, because he cannot be similarly informed.

363 U.S. at 581-82. The court should give "special heed . . . to the context in which collective

bargaining agreements are negotiated and the purpose which they are intended to serve." United

Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567 (1960). The Supreme Court explained in

United Steelworkers of America v. American Manufacturing Co.:

> The function of the court is very limited when the parties have agreed to submit all
> questions of contract interpretation to the arbitrator. It is confined to ascertaining
> whether the party seeking arbitration is making a claim which on its face is governed
> by the contract. Whether the moving party is right or wrong is a question of contract
> interpretation for the arbitrator. In these circumstances the moving party should not
> be deprived of the arbitrator's judgment, when it was his judgment and all that it
> connotes that was bargained for. The courts, therefore, have no business weighing
> the merits of the grievance, considering whether there is equity in a particular claim,
> or determining whether there is particular language in the written instrument which
> will support the claim. The agreement is to submit all grievances to arbitration, not
> merely those which the court will deem meritorious. The processing of even
> frivolous claims may have therapeutic values of which those who are not a part of
> the plant environment may be quite unaware.

363 U.S. at 567-68.

The "standard of review of an arbitrator's award is among the narrowest known to the law."

LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113, 461 F.3d at 1197 (internal

quotations omitted). "'[A]s long as the arbitrator is even arguably construing or applying the

contract and acting within the scope of his authority, that a court is convinced he committed serious

-15-

error does not suffice to overturn his decision.'" Id. (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987)).  "The arbitrator's findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the collective bargaining agreement, so is his interpretation of the contract."  Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union, 24 F.3d 86, 87 (10th Cir. 1994).

As the Tenth Circuit explained in Litvak Packing Co. v. United Food and Commercial Workers, Local No. 7, 886 F.2d 275 (10th Cir. 1989),

> [the standard that] an award [must] . . . draw . . .  its essence from the collective bargaining agreement. . . . is not an invitation to a court to substitute its judgment for that of an arbitrator.  The parties have contracted for an arbitrator to resolve their disputes, not a court. . . . They have agreed to be bound by the arbitrator's factfinding and contract interpretation whether his findings and conclusions are correct or not. . . . Thus, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. . . . If the parties disagree with the arbitrator's interpretation, their remedy is to modify their contract or select a new arbitrator.

886 F.2d at 276 (internal citations and quotations omitted).  See Terex Corp. v. Local Lodge 790 Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO, 99 F.3d 1150 (Table), No. 95-5190, 1996 WL 582744 at * 3 (10th Cir. October 10, 1996)(explaining that the standard of review is "[the] Mount Everest of standards[,] reflect[ing] the strong federal policy favoring arbitration agreements.").  "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."  United Steelworkers of Am. v. Am. Mfg. Co.,  363 U.S. at 569.

The CBA is "more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate."  United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,

363 U.S. at 578.  Mere ambiguity in the arbitrator's award does not support vacating the award.  <u>See</u> <u>United Steelworkers of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. at  598 (stating "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). "Arbitrators have no obligation to the court to give their reasons for an award.  To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions." <u>United</u> <u>Steelworkers of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. at 598.  "An arbitrator's award must be upheld unless it is contrary to the express terms of the language of the contract." <u>Int'l Union of</u> <u>Operating Eng'rs, Local No. 9 v. Shank-Artukovich</u>, 751 F.2d 364, 365 (10th Cir. 1985)(internal quotations omitted).

The scope of review of arbitration awards is narrow;"[h]owever, an arbitrator's discretion, though entitled to 'profound deference,' is not unlimited." <u>LB & B Assoc., Inc. v. Int'l Bhd of Elec.</u> <u>Workers, Local No. 113</u>, 461 F.3d 1195, 1197 (10th Cir. 2006)(quoting <u>Bruce Harwood Floors v.</u> <u>S. Council of Indus. Workers</u>, 8 F.3d 1104, 1107 (6th Cir. 1993)). An arbitrator "does not sit to dispense his own brand of industrial justice and his award is legitimate only so long as it draws its essence from the collective bargaining agreement." <u>LB & B Assoc., Inc. v. Int'l Bhd of Elec.</u> <u>Workers, Local No. 113</u>, 461 F.3d at 1197 (internal quotations omitted). An award does not draw its essence from the CBA if "it is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without factual support." <u>United Steelworkers</u> <u>of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. at  597.

Whether a record before an arbitrator should be reopened so that the decision of another arbitrator in a different case can be made a part of the record is a procedural matter. See Warehouse Employees, Local 169 v. Acme Markets, Inc., 473 F.Supp. 709, 714 (E.D. Pa. 1979). "[P]rocedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)(internal quotations omitted). "Thus, the decision whether to reopen a record is a procedural matter left properly to the final disposition of the arbitrator." Warehouse Employees, Local 169 v. Acme Markets, Inc., 473 F.Supp. at 714.

### LAW REGARDING AWARD OF COSTS AND ATTORNEYS FEES

A court may, within its discretion, award attorneys fees and costs associated with enforcing an arbitration award. See Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523, 597 F.2d 227, 230 (10th Cir. 1979). "In an action brought by a union to enforce an arbitration award, the allowance of attorneys' fees is discretionary." Id. A "successful party may recover attorneys' fees 'when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. (quoting F. D. Rich Co., Inc. v. U. S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 129 (1974)).

### ANALYSIS

The Court has jurisdiction over this award, because it is the United States District Court in and for the district where the award was made. See 9 U.S.C. §10(a). The parties agree that there are no genuine issues of material fact in dispute. See Countermotion at 8. The issue is whether the Court should vacate or enforce the arbitrator's Opinion and Award. The Court will deny NewTec's motion to vacate the arbitrator's award, because it believes that the arbitrator's award draws its

essence from the CBA.  The Court will not grant Local 2515's request for attorneys' fees and costs, however, because it does not believe that NewTec acted vexatiously or out of bad faith in bringing this action.

## I.    THE ARBITRATOR'S DECISION DREW ITS ESSENCE FROM THE CBA.

NewTec contends that the arbitrator found that its only options were to (i) terminate Calhoun or (ii) reclassify Calhoun.  See Motion at 6.  NewTec notes that the arbitrator cited to the reclassification provision of the CBA, Article Seventeen, Section 11.01(a), that requires reclassification resulting from employee performance to be at an equal or lower labor grade.  See Motion at 6.  NewTec argues that, because Calhoun was reclassified, it was required to pay Calhoun in accordance with Appendix D of the CBA.  See Appendix D (providing that "[e]mployees who are reclassified ***will* be paid a rate of pay equal to the pay rate of the highest paid employee in the job classification to which they are reclassified**.")(emphasis in original).  Thus, according to NewTec, to pay Calhoun at any other rate, lower or higher, would be in violation of the "clear and unambiguous terms of the contract."  Motion at 6.

Local 2515, on the other hand, contends that the arbitrator ruled "that NewTec did not have just cause to discipline Calhoun beyond a written reprimand."  Countermotion at 15 (citing Opinion and Award at 24, 26).  Local 2515 contends that the arbitrator found that  retaining Calhoun's higher pay rate would not violate the CBA, because under Article Seventeen, Section 11.01, "[r]eclassification resulting from employee performance will be to an equal or lower Labor Grade and will not adversely affect other employees."  Countermotion at 16 (internal quotations omitted).  Local 2515 notes that the arbitrator found retention of Calhoun's higher rate of pay would not adversely affect other employees, because Calhoun "would not be given any preferential work

assignments or similar perks to adversely affect his co-workers.  If it should result in an adverse effect, the co-workers will voice their objections."  Opinion and Award at 24.

It is possible to read the arbitrator's opinion and award different ways, and the construction advanced by both parties are not unreasonable.  The Court's task, however, is not to select the most reasonable construction, resolve the ambiguity, or decide whether the arbitrator was right.  The Court's role is much more narrow.  The Court need only determine whether the arbitrator was interpreting the contract, or was doing something else, when he made his decision and award.

Under the facts of this case, a third party -- the United States Army -- made a decision that changed the dynamics of the relationship between NewTec and its employee, Calhoun.  It is not obvious that the CBA clearly contemplated this situation.  While both parties and the arbitrator believed that reclassification was the fairest and most proper course for Calhoun after the Army's actions, it is far from clear that the CBA contemplated this action.  Article Seventeen, Section 11.00 states "[t]here are two reasons that could lead to reclassification action: a. Employee performance b. Changes in level or complexity of workload."  It is possible that the actions of a third-party, here the Army, was not contemplated by the parties when they wrote the CBA and that this situation does not fit neatly into the two stated reasons of "Employee performance" or "Changes in level or complexity of workload."  The arbitrator concluded that NewTec was using reclassification at a lower salary to discipline Calhoun, and he apparently determined that was not an appropriate use of reclassification.  The arbitrator may have, in the end, read the CBA as saying reclassification, at least to a lower salary, was not a permissible choice when the action is dictated by a third party.  The Court believes that such an interpretation of the arbitrator's opinion and award is reasonable, and that such an interpretation of the CBA is reasonably grounded in the CBA.

In any case, the arbitrator explicitly framed his findings within the context of the CBA.  <u>See</u> Opinion and Award at 26 (stating that NewTec "violated Article Seventeen when [Calhoun] was reclassified at the reduced rate or pay effective July 21, 2006).  Article Seventeen of the CBA provides:

Article Seventeen

Promotions and Reclassifications

1.00   The following definitions shall apply in this Article and throughout this Agreement:

    d.   <u>Reclassification</u> - Reclassification is defined as the award of a Job Classification at an equal or lower Labor Grade.

11.00   <u>Reclassification</u>:  There are two reasons that could lead to reclassification action:

    a.   Employee performance

    b.   Changes in level or complexity of workload

11.01   Reclassification actions will be handled differently depending on the reason:

        a.   Reclassification resulting from employee performance will be to an equal or lower Labor Grade and will not adversely affect other employees.

In the end, the Court's most significant difference with NewTec is NewTec's assertion that the arbitrator found reclassification to be improper.  The Court believes that it is unclear whether the arbitrator found explicitly that NewTec's reclassification of Calhoun was improper.  It is true that, in the "Discussion" section of his decision, the arbitrator stated; "Thus, when neither [Calhoun] nor [Carrell] could no longer work at this assignment, New[T]ec's options were to terminate the employees or reclassify and assign the employees accordingly."  Opinion and Award at 17.  In the "Conclusion" section of his decision, however, the arbitrator concluded that, although "[NewTec]

-21-

insisted that the reclassification and rate reduction was not discipline . . . [t]he Army and [NewTec] place an unjustified responsibility on the two-person "Teams" with the result that if one member of the "team" violates a work rule, both team members are equally responsible." Opinion and Award at 23. The arbitrator concluded that "[while t]hat may be true in certain situations . . .[he] believe[d] it [wa]s stretched beyond reasonable grounds in the instant case." Id. The arbitrator did not agree that continuing Calhoun's hourly rate of $24.10 would "aversely affect other employees." Opinion and Award at 24. The arbitrator was "unable to understand how the continuation of [Calhoun]'s higher rate would adversely affect other employees[, because Calhoun] would not be given any preferential work assignments or similar perks to adversely affect his co-workers." Id. Thus, the Court believes it is reasonable to read that the arbitrator's order as finding that NewTec's reclassification of Calhoun was not justified, because the reclassification was disciplinary in that, as interpreted by NewTec, it changed his pay and, as such, said reclassification resulting from a third party's actions did not fall under Article Seventeen, Section 11.00(a).

The Court also believes that the arbitrator additionally found that, as a result, continuation of Calhoun's hourly rate was appropriate, because his pay rate would "not adversely affect other employees." CBA, Article Seventeen, Section 11.01(a). The Court does not believe that the arbitrator's award was "contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without factual support." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 597. NewTec contends that the arbitrator disregarded Appendix D of the CBA in determining that Calhoun's hourly rate should remain $24.10. See Motion at 6.

Although Appendix D states "[e]mployees who are reclassified ***will* be paid a rate of pay equal to the pay rate of the highest paid employee in the job classification to which they are reclassified**," the Court believes this provision may be fairly read to apply to employees who are properly reclassified.  CBA, Appendix D.  Because the arbitrator arguably found that Calhoun was not properly reclassified, and because his reclassification thus resulted from discipline rather than employee performance, the Court does not believe that the arbitrator was required to apply Appendix D.  Moreover, even if the arbitrator erred, his award is entitled to enforcement.  See Litvak Packing Co. v. United Food and Commercial Workers, Local No. 7, 886 F.2d at 276 (internal citations and quotations omitted)("Thus, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

The Court believes that the arbitrator based his award on the CBA, and his award is "thus is entitled to profound deference."  LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113, 461 F.3d at 1197 (internal quotations omitted).  The arbitrator had "no obligation to the court to give their reasons for an award."  United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 598.  A careful review of the reasons that he gave, however, supports a conclusion that the arbitrator's award is not  "contrary to the express terms of the language of the contract" and thus should be upheld.  Int'l Union of Operating Eng'rs, Local No. 9 v. Shank-Artukovich, 751 F.2d at 365 (internal quotations omitted).

## II.     THE COURT WILL DENY LOCAL 2515'S REQUEST FOR FEES AND COSTS.

The Court will deny Local 2515's request for attorneys' fees and costs associated with enforcement of the arbitration award.  The Court may, in its discretion, award attorneys fees and

costs associated when enforcing an arbitration award.  See Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523, 597 F.2d at 230.  The Court does not believe, however, that NewTec acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  Id. (internal quotations omitted).  There were CBA provisions that supported NewTec's position, too, as another arbitrator found.

**IT IS ORDERED** that Petitioner/Plaintiff-Counterdefendant New Mexico Technology Group LLC's Motion for Summary Judgment is denied.  International Association of Machinists and Aerospace Workers, Local Lodge No. 2515's Response to Plaintiff's Motion for Summary Judgment, filed 11/2/07, and Counter-Motion for Summary Judgment is granted in part.  The Court will not award Local 2515 attorneys' fees or costs associated with enforcement of the arbitration award.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Clara B. Burns
D. James Sorenson
Kemp Smith, LLP
El Paso, Texas

    *Attorneys for the Plaintiff-Counterdefendant*

Joleen K. Youngers
Almanzar & Youngers, P.A.
Las Cruces, New Mexico

-- and --

-24-

Rod Tanner
Amanda Reichek
Rod Tanner & Associates, P.C.
Fort Worth, Texas

*Attorneys for Defendant-Counterplaintiff*